# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

FRANCISCO GONZALES-LIRANZA,

    Plaintiff,

vs.                                           Civil No. 98-997 JP/WWD

SERGEANT NARANJO,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

    1. THIS MATTER comes before the Court following submission of a *Martinez Report* by Defendant pursuant to Court order, and Defendant's Motion for Summary Judgment based on lack of jurisdiction, filed March 12, 1999 **[docket # 13]**. Plaintiff, who is proceeding *pro se* and *in forma pauperis* is currently incarcerated. Plaintiff alleges that Defendant violated his civil rights as a pretrial detainee to be reasonably protected from threats to his personal safety by other inmates. Pursuant to the Court's initial review of the complaint, Defendant Naranjo remains as the sole defendant. [see docket # 7].

*Background*

    2. Plaintiff states in his complaint that on the afternoon of August 19, 1996, he requested to be moved out of his pod in the west-side facility at the Bernalillo County Detention Center ("BCDC") because he was having problems with other inmates and "feared for his safety." He contends that his request was denied by Defendant and that an hour later he was beaten by inmates wielding "broom handles and mop handles" until he was unconscious. He allegedly sustained injuries to his right eye requiring seven stitches, and also required eight stitches to his

head. After being taken to University Hospital, he was placed in BCDC's Protective Unit ("lock-up") for eight days and then in the Drug Unit for another four. When he subsequently protested about being placed back in the west-side facility, he was again placed in the Protective Unit for about one month. Plaintiff states that he is left with an injured eye and headaches.

    3. After reviewing the *Martinez Report*, attached exhibits and all the pleadings, I find that although an incident occurred on or about August 19, 1996 which resulted in some injury to Plaintiff, Defendant's conduct did not rise to the level of disregard for Plaintiff's safety that is required to sustain a constitutional claim. The basis for this conclusion follows a scenario which is constructed from the undisputed facts.

    4. Around 1:00 p.m. on August 19, 1996, Sgt. Naranjo was summoned to F-Pod by another corrections officer and was advised that the two Cuban residents wished to speak to him. The Cuban residents (one of whom was Plaintiff), told Defendant they felt uncomfortable in the facility because of their unfamiliarity with the English language. Naranjo addressed all the residents in the pod and suggested that they all speak Spanish. He left with everyone in seeming agreement to try and get along with each other.

    5. About two hours later, bickering erupted between the Cuban residents and the other residents on F-Pod. Since it was believed that the Cuban residents might be concealing shanks, one of the corrections officers, C.O. Rivera, removed them to the sallyport area in order to conduct a personal search, while C.O. Silvers started going over to conduct a search of their bunks. As C.O. Rivera started to close the sallyport door, the Cuban residents shoved Rivera to the side of the sallyport, reached for brooms (or maps, it's not clear which) lying nearby and

started swinging at Rivera. Exs. 19, 20.[1]

6. At this point at least fifteen other inmates rushed on the Cubans and beat them up violently. Silvers, who had been on his way to search the Cuban residents' living quarters, stayed out of the brawl when he saw the other residents rush into the sallyport area because he "felt his life was in danger." Ex. 19. Silvers called for emergency backup. Naranjo arrived on the scene with assistance and restrained the Cubans and other residents outside of the pod area. The incident resulted in injury to the two Cubans (Plaintiff and Alexis Millares) and a non-Cuban resident, Tommy Baca. Ex. 18.

*Discussion*

7. Summary judgment should be granted where, taking the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party must present enough evidence to allow a reasonable jury to find for the non-moving party, and cannot rest upon mere allegations or denials of the pleadings. Orback v. Hewlett-Packard Co., 97 F.3d 429, 432 (10th Cir. 1996) (citing Wilson v. Meeks, 52 F.3d 1547, 1551-52 (10th Cir. 1995)).

8. Although Plaintiff bases his § 1983 claim on the Eighth, Thirteenth and Fourteenth Amendments, only the Eighth Amendment provides the appropriate framework for analysis. See County of Sacramento, 118 S.Ct. 1708, 1715 (1998) (citing Graham v. Connor, 490 U.S. 386, 393 (1989) (if covered by a specific constitutional provision, claim must be analyzed under the standard appropriate to that specific provision); Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th

---

[1] C.O. Rivera's report states that only resident Alexis Millares pushed him. Ex. 20. C.O. Silvers stated in his report that Rivera was pushed by "the two Cubans." Ex. 19 at 2. However, both reports are consistent in that both inmates joined in swinging at Rivera.

3

Cir. 1998) (claims concerning conditions of confinement remain bounded by the Eighth Amendment, the "explicit textual source of constitutional protection in the prison context").

9. While neither prison officials nor municipalities can absolutely guarantee the safety of their prisoners, they are responsible for taking reasonable measures to insure the safety of inmates. See Lopez v. LeMaster, 1999 WL 203054 (10th Cir. Okla.) (citing Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). In addition, to violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety. Id.[2]

10. The above events are unfortunate, but prisoners cannot seek an absolute guarantee of their safety through the federal constitution. See Berry v. City of Muskogee, 900 F.2d 1489, 1499 (10th Cir.1990) (neither prison officials nor municipalities can absolutely guarantee the safety of their prisoners). I agree with Defendant that Sgt. Naranjo's efforts earlier in the afternoon when he talked to the residents in F-Pod were at best naive and at worst, negligent in that he only delayed the fracas instead of dispelling it. However, inadvertence or error in good faith will not sustain an Eighth Amendment claim. See Blaankenship v.Meachum, 840 F.2d 741, 742 (10th Cir. 1988).

11. The critical inquiry rests on whether Defendant had a sufficiently culpable state of mind, i.e., that Sgt. Naranjo knew of and disregarded a substantial risk of serious harm to

---

[2] Even though Plaintiff is a pretrial detainee, the deliberate indifference standard applies. See Lopez v. LeMaster, 172 F.3d 756, 762 (10th Cir. 1999) (applying deliberate indifference standard used in Eighth Amendment cases brought pursuant to § 1983 both to claims for failing to prevent assault and for failure to respond to detainee's medical needs).

4

Plaintiff. See Farmer v. Brennan, 114 S.Ct. 1970, 1979 (1994). I find that no factual evidence exists which raises a dispute as to whether Defendant was deliberately indifferent to Plaintiff's safety. Other than only Plaintiff's bald assertion in the complaint, there is no evidence that Plaintiff asked to be moved out of F-Pod around the time Defendant visited F-Pod to talk with the residents, nor were there any incidents which occurred at that time or before which should have alerted Defendant to a possible threat to Plaintiff's safety.

12. Plaintiff had been incarcerated at BCDC on approximately ten other occasions, and never identified any enemies during any of the booking process. Nevertheless, from June 24, 1996 to November 16, 1997, which includes the period of time surrounding the incident, Plaintiff was moved fourteen times from where he resided in the west-side facility at BCDC. These include not only transfers at Plaintiff's request, but also transfers which were initiated by the staff when a threat to Plaintiff was perceived to exist. Defendant Naranjo was the supervisor authorizing many of the transfers.

13. After Plaintiff was discharged from the hospital where his injuries were treated, he was placed in Administrative Segregation for his protection, Ex. 9, and then was transferred out of the west-side facility at his request. Exs. 10, 11. Subsequent to the incident, then, Plaintiff was never returned to the west-side facility; the documentation shows that he was in protective custody before he was transferred out.

14. After the incident, Plaintiff was treated medically at a hospital for a laceration over his left eye. He claims he is blind in his left eye with recurring headaches. Curiously, according to a treatment note from June 1996 (two months *prior* to the incident which allegedly left him blind), a physician noted that Plaintiff "can't see out of his left eye" and was complaining about headaches.

5

The doctor diagnosed eye strain, noting that Plaintiff wears glasses but that they had broken and he had no money to replace them. Ex. 25. Exhibit 25 includes other treatment notes which mention frequent headaches and problems getting glasses. One note indicates a "possible ruptured globe and detached retina," and a loss of part of vision to that eye (note dated Nov. 26, 1996), but it is not clear what degree of vision loss was a direct result of his injuries from the incident. This question does not need to be resolved, however, because in this case they do not figure into issue of Defendant's liability.

15. Plaintiff's objections to the *Martinez Report* (which I construe as his response to the report) are collateral to the relevant issues. Plaintiff's burden as a non-movant in a summary judgment motion is to show the existence of a genuine issue as to any material fact. An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Plaintiff has failed to present factual evidence which would allow a reasonable jury to find for him. See Orback, 97 F.3d at 432 (citing Wilson v. Meeks, 52 F.3d 1547, 1551-52 (10th Cir. 1995)).

16. In sum, I find that summary judgment should be granted to the Defendant because there is no genuine issue of any material fact which requires that this case proceed to trial. However, the sole basis for Defendant's summary judgment motion is a lack of jurisdiction based on Plaintiff's failure to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a). Because I recommend dismissal of Plaintiff's claim on its merits, I need not address the issue raised in Defendant's summary judgment motion, and would deny it as moot.

**Recommendation**

I recommend that Defendant's Motion for Summary Judgment based on lack of jurisdiction **[docket # 13]** be denied as moot; that summary judgment for Defendant be entered by the Court *sua sponte* on the merits of the case;[3] and that this civil rights claim be dismissed on its merits and in its entirety.

Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections with the clerk of the district court within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

                                                       */s/ William B. Deaton*
                                              UNITED STATES MAGISTRATE JUDGE

---

[3] The Order requiring a *Martinez Report* (docket # 15) gave notice to the parties that the report may be used in deciding whether to grant summary judgment on Plaintiff's claims. See Durtsche v. American Colloid Co., 958 F.2d 1007, 1009 n.1 (10th Cir. 1992) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986) (district courts are "widely acknowledged to possess the power to enter summary judgment sua sponte").